# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ADAM C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19-cv-0023 |
| v. ) | |
| ) | Magistrate Judge Susan E. Cox |
| ANDREW M. SAUL, Commissioner of the ) | |
| Social Security Administration, [1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Adam C. ("Plaintiff")[2] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Plaintiff's Brief in Support of his Motion to Reverse the Decision of the Commissioner of Social Security [dkt, 15], which the Court construes as a motion for summary judgment, is GRANTED, and Defendant's Motion for Summary Judgment [dkt. 19] is DENIED. The Administrative Law Judge's decision is reversed and remanded for further proceedings consistent with this opinion.

I. Background

Plaintiff filed for Disability Insurance Benefits and Supplemental Security Income on March 11, 2015, alleging he had a disability onset date of March 15, 2013. (R. 13.) Plaintiff's application was denied by the state agency both initially and upon reconsideration. (*Id*.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on July 18, 2017. (*Id*.) On November 13, 2017, the ALJ issued a written decision finding that Plaintiff was not disabled, and

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of the Social Security Administration. Pursuant to Federal Rule Civil Procedure 25(d), he is hereby substituted as Defendant.

[2] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

the Appeals Council denied Plaintiff's request for review of that decision, making the ALJ's decision the final decision of the Commissioner. (R. 1-3, 13-24.)

In his written decision, the ALJ followed the five-step analytical process required by 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 15, 2013, the alleged onset date. (R. 16.) At step two, the ALJ concluded that Plaintiff had severe impairments of bipolar disorder, learning disability, intermittent explosive disorder, and attention deficit hyperactivity disorder. (*Id*.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.) The ALJ then determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform the full range of work at all exertional levels, but with the following non-exertional limitations: Plaintiff could only understand, remember, and carry out simple instructions; no hourly quotas, but Plaintiff could handle end-of-day quotas; only occasional contact with supervisors, coworkers, and the general public; and Plaintiff could adapt to routine changes in the work environment. (R. 17.) At step four, the ALJ concluded that Plaintiff could not perform any of his past relevant work. (R. 22.) At step five, based on Vocational Expert ("VE") testimony and the findings about Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, including hand packager, inspector, and sorter. (R. 22-23.) As such, the ALJ found that Plaintiff was not disabled under the Act. (R. 23.)

In finding that Plaintiff could perform the aforementioned jobs, the ALJ noted that the VE "testified that training periods may include some days in which an individual would have more than occasional contact with supervisors or coworkers, but that in her opinion, an individual with the above residual functional capacity would be able to perform the above jobs in spite of the training period requirement." (*Id*.)

2

At the hearing, under questioning by Plaintiff's attorney, the VE testified that the training period for the above-referenced jobs would last approximately 30 days, and that a hypothetical individual would have contact with a supervisor or coworker more than one-third of the work day during that time period. (R. 69.) When asked if the hypothetical individual would be allowed only occasional contact during the training period, the VE answered that it would not be allowed. (R. 70.) Upon re-examination by the ALJ, the VE and ALJ had the following exchange:

> Q: Ms. Kniaz, when we talk about occasional contact with supervisors, doesn't that encompass the notion that some days there'll be more contact than others?
> A: Yeah.
> Q: On the whole?
> A: Yes.
> Q: That it will average out to infrequent contact?
> A: Correct.
> Q: So one day in any job, the claimant might have to talk to a supervisor more than normal, but many other days he would be just left alone. Is that correct?
> A: Yes.

(R. 71.)

This testimony provided the basis for the ALJ's finding that Plaintiff would be able to work as a hand packager, inspector, and sorter.

## II. Social Security Regulations and Standard of Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving

conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). "An ALJ has a duty to fully develop the record before drawing any conclusions…and must adequately articulate his analysis so that we can follow his reasoning." *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

### III. Discussion

At step five of the sequential analysis, the Commissioner has the burden of proving that jobs exist in the regional economy that a person of the claimant's vocational profile could perform. In this case, there is a fundamental disconnect between Plaintiff's RFC, the VE's testimony regarding the ability of an individual with the Plaintiff's RFC to survive the training for jobs as a hand packager, inspector, and sorter, and the ALJ's conclusion that the Plaintiff could perform those jobs. The ALJ found that the Plaintiff needed to be limited to only "occasional interaction with supervisors, coworkers, and the general public." According to the Social Security Administration, the term "occasionally" "means that the activity or condition occurs at least once *up to one-third of an 8-hour workday*." Program Operations Manual System, DI 25001.001 Medical and Vocational

Quick Reference Guide, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001. The VE very clearly testified that the jobs listed above would all require contact with supervisors and coworkers for more than one-third of the work day, which would constitute "more than occasional contact during the training period for all of these jobs." (R. 69.) In other words, the training period would exceed the limitations of a person with Plaintiff's RFC. The testimony from the VE in this section is exceedingly clear. Given the VE's testimony and the Plaintiff's RFC, the only conclusion the Court can reach is that the Plaintiff could not perform the jobs cited in the ALJ's opinion because he would be unable to complete the training period necessary to begin those jobs. It seems self-evident to the Court that a person who cannot complete the training period for a job cannot perform that job. As such, the Court finds that the ALJ failed to build a logical bridge between the evidence in the record and his conclusion that the Plaintiff could perform the jobs of hand packager, inspector, and sorter.

The Commissioner argues that the ALJ's re-examination cleared up the apparent conflict between the VE's testimony and the ALJ's RFC finding; a careful reading of the colloquy between the ALJ and the VE reveals otherwise. The testimony does not establish that "occasional contact" can mean that a job requires contact with coworkers or supervisors for more than one-third of an eight-hour workday. The first question simply establishes a fact not in contention – occasional contact "encompasses the notion that some days there'll be more contact than others." (R. 71.) Of course that is true. Some days, interactions with coworkers and supervisors may be 10% of the work day, others 22%, the next 33.3%; these would all still fall within the definition of "occasionally" and "encompass[] the notion that some days there'll be more contact than others." What that testimony does not establish is that a job can have contact with coworkers and supervisors that exceeds one-third of an eight-hour workday and still fall within the scope of "occasional contact." The second question shows that such a job would "average out to infrequent contact." (*Id.*) If we

assume that "infrequent contact" is interchangeable with "occasional contact,"[3] this question only serves to demonstrate a mathematical truism. If a job requires less than one-third contact every day, it will average out to contact that is less than one-third of all workdays. Finally, the last pertinent question reiterates the first point; some days might have more contact than "normal," and some days might have no contact at all. (*Id.*) It does not establish that when the contact is "more than normal" that it can be more than one-third of an eight-hour workday and still be considered "occasional contact."

The Commissioner's apparent proposed definition of "occasionally" – *i.e.*, that the contact required to perform the job or the training for the job must average out to no more than one-third of all working hours – is plainly contrary to the definition promulgated by the Social Security Administration, which defines the term per each eight-hour workday. Moreover, if the Court accepted the Commissioner's definition, it would create more questions than it would answer. Does "average" measure the median or mean? If a person had 100% contact with supervisors in one week and 0% contact for the following two weeks, would that be "occasional contact?" How many days do we need to collect before we can determine what the "average" contact is? Would it be a rolling average? None of these questions are answered by the Commissioner, and none of them were probed by the ALJ. The Court believes that the definition of occasional is clearly stated and that the Court must adhere to that plain meaning; for contact with coworkers and supervisors to be "occasional," it must occur for no more than one-third of the day in any and every eight-hour workday.

The Commissioner contends that the conclusion the Court reaches is "untenable." The Court disagrees with the non-binding cases that suggest otherwise. *See, e.g.*, *Hemby v. Berryhill*, 2017 W:

---

[3] "Frequently" "means that the activity or condition occurs one-third to two-thirds of an 8-hour workday. Program Operations Manual System, DI 25001.001 Medical and Vocational Quick Reference Guide, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001. Therefore, the Court believes it safe to assume "infrequent" means "less than one-third of an 8-hour workday," which is the same as "occasionally."

951785, at *11 (E.D. Mo. Mar. 20, 2017); *Dean v. Berryhill*, 2019 WL 1170479 (E.D. Cal. Mar. 13, 2019). The Court believes what is truly untenable is finding that a person whose RFC limits him to only occasional contact with coworkers and supervisors can perform a job that requires greater than occasional contact with coworkers and supervisors. The Court might be more sympathetic to this argument if the VE had testified that every training period for every job requires more than occasional contact with coworkers and supervisors. However, the VE proffered no such opinion, instead only testifying that three jobs listed above may have training periods that require greater than occasional contact.[4] The ALJ found that Plaintiff could perform these jobs even though the training for those positions required him to perform beyond the limitations set by ALJ in the Plaintiff's RFC. This is a logically inconsistent position and requires remand.

## CONCLUSION

Plaintiff's Brief in Support of his Motion to Reverse the Decision of the Commissioner of Social Security [dkt. 15], which this Court construes as a motion for summary judgment, is GRANTED, and Defendant's Motion for Summary Judgment [dkt. 19] is DENIED. The Administrative Law Judge's decision is reversed and remanded for further proceedings consistent with this opinion.

Entered: 11/19/2019

_____
Susan E. Cox
United States Magistrate Judge

---

[4] It is entirely possible that many jobs have training periods that can be limited to occasional contact with coworkers and supervisors, but clearly the jobs of hand packager, inspector, and sorter cannot. Those are the jobs the ALJ found that existed in the national economy that Plaintiff could perform, and this finding was contradictory to the RFC the ALJ also found.